IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANA L. JORDAN,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>THE MEL BLOUNT YOUTH HOME  )<br>OF PENNSYLVANIA, MEL BLOUNT,  )<br>TIANA BLOUNT, CAROL LOCKETT,  )<br>)<br>Defendants.  ) | Civil Action No. 05-1331<br>Judge Joy Flowers Conti<br>Magistrate Judge Lisa Pupo Lenihan |

## REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Defendant's Motion for Summary Judgment be granted as to Plaintiff's claims for (a) violation of the Equal Protection Act of 1963; (b) subjection to a hostile work environment; (c) reverse race discrimination and/or retaliation; and (d) age discrimination and/or retaliation. It is respectfully recommended that the Motion be denied in its remaining respects. Plaintiff is clearly entitled to proceed on her claims under the

Pennsylvania Whistleblower Law. And although the Court may entertain doubts as to Plaintiff's ability to ultimately carry her burden of persuasion as to gender discrimination and/or retaliation, there are questions of material fact and credibility sufficient to survive, under the applicable standard, summary judgment.

## II. REPORT

This case involves claims principally related to the alleged discriminatory and/or retaliatory termination of Plaintiff, Diana L. Jordan ("Plaintiff"). Plaintiff has brought claims of race, age, and gender discrimination pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621 (the "ADEA"); the Equal Pay Act of 1963, 29 U.S.C. § 206(d); and the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 (the "PHRA").[1] She also alleges Defendants' violation of the Pennsylvania Whistleblower Law, 43 Pa.C.S.A. § 1421 (the "Whistleblower Law").

---

1. Plaintiff's claims under Title VII and the PHRA are, for ease of reference, hereafter collectively stated as her claims "under Title VII". The claims are addressed collectively because the same standards/analysis applies.

A.  **Statement of Facts and Procedural History**

This case is a civil action for relief in consequence of Defendants' alleged discriminatory and/or retaliatory harassment and termination of Plaintiff. As noted, *supra*, Plaintiff, a 50 year old, Caucasion female alleges reverse race, age, and sex discrimination and/or retaliation, as well as retaliation in violation of "whistleblower" laws against her employer, Defendant Mel Blount Youth Home (the "Youth Home"), and each of the individual Defendants, who are African-American and between the ages of 43 and 57. Defendant Youth Home is a Pennsylvania non-profit corporation receiving public/government funding.

Plaintiff was employed by the Youth Home for fourteen (14) months, beginning in February, 2004. Although initially hired as a part-time therapist, she was promoted to the full-time position of Program Director in April, 2004. Plaintiff's immediate supervisor was Carol Lockett ("Lockett"), whose supervisor was Tianda Blount, the wife of the CEO of the Youth Home, Mel Blount ("Blount").[2]

The essential components of Plaintiff's Complaint are as follows:

(1) that Defendant Blount made inappropriate and discriminatory statements concerning women's emotional handicaps to Plaintiff in the presence of the other Defendants;[3]

---

2. Cf. Brief in Opposition to Motion to Dismiss at 5 (describing Tianda Blount as the "immediate supervisor of Plaintiff's immediate supervisor").

3. Plaintiff alleges that Mr. Blount "repeatedly told Plaintiff women were weak" and that Mrs. Blount and Ms. Lockett advised her that Mr. Blount "would not tolerate" a display of emotions. See Plaintiff's Memorandum of Law in Opposition at 9. She also alleges that Mr. Blount told her he "should have hired all men" and "humiliated" her by responding to her request for a $2 per hour pay raise by asking if she really thought she was worth $20 an hour. See Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment at 13.

(2) that Plaintiff's direct supervisor, Lockett, failed to take corrective action when Plaintiff notified her that a subordinate, younger, African-American female, Erica Johnson, was disrespecting and undermining Plaintiff;[4] that Defendants were aware of and permitted this insubordination; and that Plaintiff was prohibited from disciplining Ms. Johnson;

(3) that Lockett gave Plaintiff supervisory reprimands (following a March 15, 2005 management meeting regarding her interaction with Ms. Johnson, which Plaintiff left prior to conclusion) that were more severe than the discipline meted out to a younger, African-American

---

4. Plaintiff asserts that Ms. Johnson harassed and embarrassed her by ignoring her directives, walking away, tape recording her and attempting to intimidate her. See id. The particulars of Ms. Johnson's insubordination and Defendants' responses, as detailed in Plaintiff's April 7, 2005 EEOC Charge, are:

(a) On March 7, 2005 Plaintiff sent a memo to Ms. Lockett indicating that Ms. Johnson was complaining about her hours, her shift work, and that her position had been misrepresented to her, and that she "should have been more compliant and flexible", particularly as she was on a preliminary probation. Moreover, Plaintiff alleged that Ms. Johnson used threatening body language, walked away from Plaintiff, and displayed a tape recorder to another employee, indicating that she was taping interactions/conversations. Ms. Lockett discussed the matters with Plaintiff and with Ms. Johnson.

(b) On March 11, 2005, Ms. Lockett issued a reprimand to Ms. Johnson.

(c) On March 14, 2005, a meeting was held with Plaintiff to discuss her supervisory relationship/interaction with Ms. Johnson; Plaintiff was advised no further action would be taken until after a fundraising event in early April; Plaintiff left that meeting prior to conclusion.

(d) On March 15, 2005, Plaintiff was issued a supervisory reprimand by Ms. Lockett for walking out of the meeting.

(e) The next day, Plaintiff met with Mr. Blount and was issued a similar second memo.

During this time, Plaintiff was actively seeking other employment and, indeed, began work at the Mars Home for Youth, in April 2005 (shortly after her termination by Defendant), having visited there during the second week of March. See Plaintiff's Concise Statement of Material Facts, Exhibit 20.

employee[5] and/or in retaliation for Plaintiff's complaints about discrimination and/or harassment;[6]

(4) that Plaintiff was replaced by a younger, African-American male, who had fewer job responsibilities because he was provided with an assistant;

(5) that Plaintiff was terminated on March 31, 2005 in retaliation for voicing complaints about, and on March 25, 2005 informing a Contract Monitor for Allegheny Children and Youth Services (the "ACYS Monitor") of, alleged violations in youth housing and work conditions existing at the Youth Home;[7] and

---

5. Cf. Complaint at ¶ 13(g), (h) (alleging that Plaintiff was disciplined "more harshly" than Ms. Johnson who "displayed much more aggressive and insubordinate behavior" than Plaintiff).

6. The parties dispute the facts regarding Plaintiff's premature departure from this March 15, 2005 meeting. Plaintiff asserts that she was experiencing medicine-related mood changes and therefore had to excuse herself from the meeting, because she had been directed by Ms. Lockett that crying would not be tolerated by Mr. Blount. Plaintiff refused to sign disciplinary Memos regarding her assertedly inappropriate departure from the meeting.

Plaintiff's one-year evaluation, prepared on March 11 and signed by Ms. Lockett on March 22, 2005, was lower than her evaluation nine-months prior, but indicated that she was exceeding the position requirements and expectations. See Plaintiff's Memorandum of Law in Opposition at 6. Plaintiff declined to sign her Performance Evaluation and/or indicated she intended to seek legal counsel. See Brief in Support of Motion for Summary Judgment at 7, n. 4.

Plaintiff acknowledges that she also previously departed a management meeting shortly after her April 2004 evaluation because Mr. Blount had "condescending[ly]" suggested she was not worth $20 per hour and she was "justified in removing herself from an embarrassing, humiliating situation." Plaintiff's Memorandum of Law in Opposition at 5.

7. Plaintiff's testimony is that she was advised on March 22 of an upcoming ACYS inspection on March 25, and expressed her concerns regarding the housing of younger and older children together owing to a staff shortage. Defendants then contacted the ACYS inspector, Ms. Woodall, in advance and were advised that they were required to obtain approval from the Department of Public Welfare regarding any temporary housing arrangements, and should contact CYF. During the inspection on March 25, Plaintiff discussed her concerns and made Ms. Woodall aware that no approval/authorization had been/was being obtained. See Plaintiff's

(continued...)

(6) that each of the Defendants, who are African-American, discriminated against Plaintiff and subjected her to (a) sex, race and age harassment, (b) humiliation and embarrassment, and (c) a hostile work environment.[8]

### B. **Summary Judgment**

In deciding a Motion for Summary Judgment, the Court considers whether the non-moving party has - through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any - established any genuine issue of material fact sufficient for a reasonable jury to find in her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986). The non-moving party may not rest upon factually unsupported allegations contained in her pleadings, but all inferences must be drawn and all doubts resolved in her favor. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Colburn v. Upper Darby Townshp., 946 F.2d 1017, 1020 (3d Cir. 1990).[9] If, however, the non-moving party fails to present evidence sufficient to establish an "element essential to that party's case, and on which that party will bear the burden of proof at trial", summary judgment is appropriate. Celotex, 477 U.S. at 322. Neither a "metaphysical doubt" nor "merely colorable" evidence is sufficient for a court to deny summary

---

7. (...continued)
Memorandum of Law in Opposition at 12. Defendants were cited that day for improper housing. Id. at 13.

8. See id. at § 14 (alleging an "overall scheme of continuous and ongoing . . . unlawful harassment . . . , retaliation, and a hostile work environment").

9. See also Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999) (noting that plaintiff cannot avert summary judgment merely by speculation or conclusory allegations).

judgment. See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Anderson, 477 U.S. at 249-252. See also Celotex, 477 U.S. at 324 (explaining that non-movant must go beyond the pleadings and show, through affidavits, depositions, answers to interrogatories and admissions on file, specific facts demonstrating genuine issue).

### C. Analysis

#### 1. Pennsylvania Whistleblower Law

Under the Whistleblower Law, an employer cannot discharge, or otherwise discriminate or retaliate against an employee because she "makes a *good faith* report . . . to the employer or appropriate authority [of] an instance of wrongdoing or waste." Wrongdoing is defined as "a violation that is not of a merely technical or minimal nature of a federal or state statute or regulation, of a political subdivision ordinance or regulation, or a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1421 *et seq.* (emphasis added).

Plaintiff's evidence is that she was a concerned that, owing to a staff shortage, younger children were being housed with older children, which was a violation of Defendant's contract with ACYS and placed the younger children at risk of, *e.g.*, sexual and/or other abuse. She further asserts that it was a violation of the Department of Welfare Regulations. Plaintiff was also concerned that the work practices at the Youth Home were in violation of child labor laws.

On March 25, 2005, she advised the ACYS inspector, Ms. Woodall, as to both these concerns. See Plaintiff's Memorandum of Law in Opposition at 12-13.[10]

Defendant asserts that Plaintiff has failed to establish a claim because she (a) erred in her belief, (b) failed to allege any "wrongdoing" within the statutory definition, and/or (c) provided no new information to Ms. Woodall. First, the Court notes that the statute speaks to a "good faith" report.[11] Second, it further notes that Plaintiff's concerns of sexual or other abuse owing to housing violations and/or work practice violations go to important issues of public concern, *i.e.*, the safety and well-being of children in the public's (through their governing agency's) care, as recognized in Defendants' contract for services with ACYS. The very purpose of the periodic inspections is to *ensure* that contract providers such as Defendants are adhering to their legal and ethical obligations and to *ensure* the safety and well-being of these children.[12] Third, Plaintiff''s

---

10. On March 28, Plaintiff and two others met with Ms. Blount to further express these concerns. See Plaintiff's Memorandum of Law in Opposition at 7; Plaintiff's Concise Statement of Material Facts at ¶ 53.

11. Compare Brief in Support of Motion for Summary Judgment at 14, n. 8 (concluding that "[a]s Plaintiff cannot establish a violation of a law or regulations she cannot support her claim that the Youth Home engaged in wrongdoing"); Reply Brief in Support at 5 ("Plaintiff has the burden of establishing actual wrongdoing . . not merely her 'concerns' . . . ."). Defendants are entirely in error. It is clear to this Court from its review of Pennsylvania law that where an employee makes a report with reasonable suspicion of wrongdoing, she has done so within the meaning of the Whistleblower law. See, *e.g.*, Golaschevsky v. Com. Dept. of Environ. Resources, 683 A.2d 1299 (Pa.Comwlth. 1996); Lutz v. Springettsbury Tp., 667 A.2d 251 (Pa. Comwlth. 1995) (explaining that employee makes good faith report where she "has reasonable cause to believe it true") (citing 43 P.S. § 1422).

12. See also Plaintiff's Concise Statement of Material Facts, Exhibit 19 (March 25, 2005 Letter from Allegheny County Department of Human Services to Defendant Mel Blount indicating that during her visit Ms. Woodall was informed that due to a staff shortage younger and older boys were being housed together, that this was in violation of the Youth Home's contract *and* of Department of Public Welfare regulations, that the children must be separated immediately, and that a Plan of Correction must be completed by the Youth Home).

evidence suggests that Defendants contacted Ms. Woodall (on March 23) and made a preliminary disclosure of a housing violation after Plaintiff expressed her concerns to her employer (on March 22),[13] and that Plaintiff subsequently provided information regarding possible continuing wrongdoing at the time of Ms. Woodall's March 25 inspection.[14] It appears clear to this Court, therefore, that Defendant's expressions of concern to her superiors *and* to Ms. Woodall fall squarely within the scope of activity protected by this legislation and that questions of material fact exist.

Plaintiff has introduced evidence that her termination on March 31st followed within six (6) days of her March 25th reporting to ACYS of possible violations in Defendant's youth housing and/or work practices, and despite an "exceeds requirements/expectations" annual performance review executed by her supervisor on March 22nd.[15] Accordingly, she is entitled to proceed on this claim. The record supports material fact questions regarding whether Plaintiff

---

13. Cf. Lutz v. Springettsbury Tp., 667 A.2d 251, 254 (Pa. Commwlth. 1995) (concluding that "[w]hether an employer or employee initiated [action as to wrongdoing] may indeed be relevant to consideration of whistleblower claims").

14. Compare Brief in Support of Motion for Summary Judgment at 14-15 (asserting that "Plaintiff could report [nothing] that Woodall did not already know" because Ms. Lockett contacted her on March 23) with Plaintiff's Memorandum of Law, *supra* n. 7.

15. It should be noted that a Pennsylvania Commonwealth Court has held that although an individual may be held liable under the Whistleblower Law, the only party with the ability to satisfy a damage award is the controller of the funds necessary to comply with the judgment (as opposed to, *e.g.*, the individual who terminated the complainant). See Retenauer, 642 A.2d at 592-594 (vacating monetary damage award for back wages and costs of litigation where employer City was not named in suit or afforded opportunity to defend). Cf. Rankin, 963 F.Supp. at 463 (noting that "back wages are a measure of lost compensation and an employee is generally compensated by the employing public body rather than the particular superior who may be the subject of an action under the Whistleblower Law"); id. at 469 (finding Retenauer "a persuasive indication of the position the Pennsylvania Supreme Court would adopt if it were to address" the issue).

was terminated on March 31st for legitimate reasons, *e.g.*, increasingly poor attitude/performance owing to dissatisfaction with her employer's handling of her interpersonal difficulties with Ms. Johnson and/or intended departure from Defendant's employment, or for illegitimate reasons, *e.g.*, reporting of reasonable suspicion of wrongdoing.

### 2. Equal Pay Act

Plaintiff has failed to make out a claim under the Equal Pay Act. To the extent Plaintiff continues to allege that she was replaced by a younger, African American male - Michael Moffett - who was paid more to do the same work, those allegations are factually unsupported. To the contrary, the evidence is that Plaintiff's starting salary in the position was $38,000 and her replacement's was $35,000. See Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment at 2-3. To the extent Plaintiff has therefore revised her assertions to a complaint that her replacement's job responsibilities were reduced because Defendant designated another employee in the new position of Assistant Program Director,[16] she still fails to establish a claim. The Act invoked is the Equal Pay Act, not the Equal Work Act. It protects employees from discrimination by requiring that employees be paid the same for performing equal work. See 29 U.S.C. § 206; Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000). Plaintiff has simply not proffered sufficient evidence for a reasonable factfinder to adduce that another employee was paid more for substantially similar work.[17]

### 3. Hostile Work Environment Under Title VII

---

16. See Plaintiff's Memorandum of Law in Opposition at 2-3.

17. As Defendant notes, Plaintiff has introduced no specific evidence regarding, *e.g.*, Program Director job responsibilities assumed by Ms. Shattock or job responsibilities performed by herself but not by Mr. Moffett.. See Brief in Support of Motion for Summary Judgment at 4.

In Meritor Savings Bank, the Supreme Court observed that "hostile work environment" harrassment must be pervasive or severe enough "to alter the conditions of . . . employment and create an abusive working environment." Meritor Savings Bank FSB v. Vinson, 477 U.S. 57, 67 (1986) (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)). The test looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it interferes with an employee's work performance. See McGraw v. Wyeth-Ayerst Laboratories, Inc., 1997 WL 799437 (E.D. Pa. Dec. 30, 1977) (discussing Meritor Savings).[18]

Plaintiff asserts that Defendants created a "severe and pervasive" hostile work environment, as required to establish this claim, because (1) they undermined her authority over subordinates Erica Johnson and Tom Woods and (2) Mr. Blount "degraded and humiliated" Plaintiff by telling her women were emotional/weak and he should have hired all men, and questioning her entitlement to $20 an hour; and (3) Mrs. Blount and Ms. Lockett instructed her not to cry in Mr. Blount's presence. See Plaintiff's Memorandum of Law in Opposition at 14-15.[19]

Neither Defendants' alleged gender-discriminatory remarks nor their alleged overruling of Plaintiff's management/discipline of two subordinates rises to the level of a hostile work

---

18. See also Faragher v. Boca Raton, 524 U.S. 775, 788 (1998) ("Conduct must be extreme to amount to a change in the terms and conditions of employment.").

19. See also id. at 15 (noting that Tom Woods was Ms. Lockett's brother and alleging preferential treatment owing to their family relationship); Brief in Support of Motion for Summary Judgment at 16 (noting that Plaintiff's complaint as to Mr. Woods is that she was overruled on her decision to decline his request to take personal time off during December 2004); Plaintiff's Concise Statement of Material Facts, Exhibit 10 (noting that Woods requested time off from December 24 to December 29).

environment, *i.e.*, one in which "the workplace is permeated with discriminatory intimidation, ridicule and insult". Amati v. U.S. Steel Corp., 2007 WL 3256850, *16 (W.D. Pa. Nov. 2, 2007).          **4. Reverse Race Discrimination and/or Retaliation under Title VII**

To make out a claim of reverse race discrimination and termination, Plaintiff must present sufficient evidence from which a reasonable factfinder may conclude that she was treated less favorably than others because of her race and the circumstances of her termination give rise to an inference of race discrimination. See, *e.g.*, Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000); Iadimarco v. Runyon, 190 F.3f 151, 163 (3d Cir. 1999). See also id. at 166 (explaining that if employer articulates non-discriminatory reason, Fuentes test applies and plaintiff must show evidence from which fact finder could "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action").

Plaintiff alleges no racially discriminatory remarks. Plaintiff's claim of race discrimination is partly premised on her employer's restriction/overrruling of the discipline/personal leave she deemed appropriate for two African American subordinates, Erica Johnson and Tom Woods.[20] But the degree of discipline/employment conditions an employer imposes on its employees is for the employer and is not a perquisite of its supervisors. If, as Plaintiff alleges, a subordinate was treated preferentially because s/he was African American, those facts may give rise to a claim by his/her similarly-situated white co-workers. To the extent Plaintiff's claim of race discrimination or race-based retaliation might be based on an assertion

---

20. See Plaintiff's Memorandum of Law in Opposition at 4 (asserting, as evidence of racial discrimination, that "Defendants failed to support [Plaintiff's] decisions in regards to disciplining [two] subordinates" who were younger and African-American).

that African-American supervisors were allowed to impose different discipline on African-American subordinates and their work was thus facilitated/made lighter (*i.e.,* the supervisors were therefore treated more favorably), or that Plaintiff was otherwise discriminated against/treated disfavorably because of her race, it is unsupported by the post-discovery record.[21]

---

21. Plaintiff makes general allegations premised on personal belief and/or speculation. Her assertions of evidence of racially discriminatory treatment are limited to: (1) that her superiors, *i.e.* Mel Blount, TiAnda Blount, and Carol Lockett were African-American; (2) she experienced problems with one particular employee - Ms. Johnson - who allegedly received less discipline for behavior which Plaintiff asserts was more insubordinate than her own and was subsequently promoted to Program Director; and (3) another Caucasian employee, Callie Shattuck, was employed longer than Ms. Johnson but was made Assistant Program Director under Mr. Moffatt. See Plaintiff's Memorandum of Law in Opposition at 4. These assertions, without further evidence and in light of the record, as discussed *supra*, do not make out a claim of racially discriminatory or retaliatory treatment against this Plaintiff.

The Third Circuit has held that the race of supervisory/decisionmaking individuals is "insufficient to establish a *prima facie* case of discrimination without more." Iadimarco, 190 F.3d at 156. Although Plaintiff asserts that Ms. Johnson was treated more favorably, the record indicates that both Plaintiff and Ms. Johnson were spoken to and reprimanded for workplace misconduct; neither was suspended. Cf. Anderson v. McIntosh Inn, 295 F.Supp.2d 412, 420-21 (D.Del. 2003) (granting summary judgment against claims of disfavorable treatment owing to race and pretextual termination for insubordination where record did not support general allegations and plaintiff offered no evidence of, *e.g.*, past complaints of discrimination or disfavorable treatment). Moreover, in order to be similarly situated, Plaintiff and Ms. Johnson must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment." Coulton v. Univ. of Pennsylvania, 2006 WL 759701, *7 (E.D. Pa. March 21, 2006); see also Vukoson v. Bechtel Bettis, Inc., 124 Fed.Appx. 716, *2 (3d Cir. 2005) (noting, in affirming summary judgment for employer, that degree of discipline for misconduct "is only relevant . . . if the comparators were similarly situated"). The record indicates that the importance of her conduct *as a supervisor* with more responsibility for morale, order, and standard-setting/behavioral-modeling was articulated/emphasized to Plaintiff.

Similarly, Plaintiff's speculations that she would had been treated differently if she were African-American, see, *e.g.*, Plaintiff's Memorandum of Law in Opposition at 4 and 8, are only that. Cf. Brief in Support of Motion for Summary Judgment at 9 (quoting Plaintiff's deposition testimony in which she postulates that Defendants "would have been more accepting" of the expression of concerns to the ACYS inspector if they'd been made by an African-American

(continued...)

Finally, to the extent this claim may be based on the race of Plaintiff's replacement, it is not supported by evidence sufficient to permit a reasonable factfinder to conclude that the decision was motivated by race, *i.e.*, it is insufficient to Plaintiff's ultimate burden of proof. See McGraw v. Wyeth-Ayerst Labs, Inc., 1997 WL 799437, *7 (E.D. Pa. Dec. 30, 1997) (holding that replacement of female employee with male was insufficient to demonstrate disparate treatment or discrimination under Title VII).[22] In addition, the evidence is that Defendant employed a diverse workforce of Caucasian and African-American employees and Plaintiff makes out no statistical case of racial discrimination in Defendant's employment.[23]

### 5. Age and Gender Discrimination and/or Retaliation Under the ADEA and Title VII

---

21. (...continued)
male).

Finally, the Court notes - with respect to Plaintiff's claim of race discrimination retaliation - that Plaintiff's summary of her difficulties with Ms. Johnson, as reported in her April 2005 EEOC charge, does not indicate that she alleged/complained of any racial discrimination element to either Ms. Johnson's insubordination or her supervisor's responses at that time. See Plaintiff's Concise Statement of Material Facts, Exhibit 7. Nor does her Concise Statement of Material Facts identify any complaints/reports of race discrimination to her employer.

22. Cf. Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996) ("That one's replacement is of another race, sex or age may help to raise an inference of discrimination, but it is neither a necessary or sufficient condition."); O'Sullivan v. New York Times, 37 F.Supp.2d 307, 319 (S.D.N.Y. 1999) (finding that such replacement may satisfy *prima facie* case but is not enough to create an issue of fact under pretext prong).

23. Although Plaintiff asserts that the "majority of Defendants' employees consist of African-Americans and males", see Plaintiff's Memorandum of Law in Opposition, she does not adequately support it. Compare Plaintiff's Concise Statement of Material Facts at Exhibit 1 (list of employees, designating gender, and race, and indicating a total of 62 employees (including the parties): 32 male and 30 female, and 34 Caucasian and 28 African-American employees) with id. at Exhibit 23 (list of employee names and certain overtime hours, which Plaintiff summarizes as listing 22 "non-salaried" employees, with only "six white females").

Under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Plaintiff must first establish her *prima facie* case, whereupon Defendants must articulate a legitimate non-discriminatory reason for their adverse employment decision(s). Plaintiff may overcome Defendants' articulated bases by evidence of pretext, *e.g.*, evidence of "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions . . . such that a reasonable factfinder could find them unworthy of credence and hence infer that the proffered non-discriminatory reason did not actually motivate the employer's action" or evidence which "allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); see also Simpson v. Kay Jewelers, 142 F.3d 639, 644-45 (3d Cir. 1998). That is, the factfinder must have sufficient evidence from which to believe "the plaintiff's explanation for the adverse action, *i.e.*, that the defendant intentionally discriminated or retaliated against the plaintiff." Anderson v. McIntosh Inn, 295 F.Supp.2d 412, 418 (D.Del. 2003) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)).[24]

---

24. In Reeves, the Supreme Court resolved an inter-circuit conflict regarding interpretation of the McDonnell Douglas test as to burdens of proof and evidence of pretext. More particularly, the Court held that while a *prima facie* case and sufficient evidence of pretext may permit a trier of fact to find discrimination, liability depends on whether the protected trait actually motivated the employer's decision, *i.e.*, "[i]t is not enough . . . to *dis* believe the employer", the factfinder must reasonably believe the "plaintiff's explanation of intentional discrimination." Reeves, 530 U.S. at 147 (quoting St. Mary's Honor Center, 509 U.S. at 111-113). Thus, the Court concluded that the appropriateness of judgment turns on the evidence in a particular case and that "[c]ertainly there will be instances where, although a plaintiff has established a *prima facie* case and introduced sufficient evidence to reject the employer's explanation, no rational factfinder could conclude discrimination had occurred." Id. at 147-48 (noting that, in many cases, when the employer's justification is eliminated, the alleged discrimination may well be the most likely alternative explanation); id. (noting, in contrast, that "[i]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the
(continued...)

Defendants have conceded that Plaintiff has stated *prima facie* cases of age and gender discrimination.[25] They maintain, however, that she has failed to produce evidence sufficient to overcome their proffer of legitimate non-discriminatory reasons for critical performance reviews and termination.[26] Plaintiff has introduced specific evidence from which the jury might reasonably conclude that she was not terminated for the reasons articulated by Defendants.[27] And she has introduced specific evidence that Defendants - her superiors and the principal decisionmakers in her discipline and termination - made gender (but *not* age) discriminatory remarks, *i.e.*, remarks reflecting offensive stereotypes regarding women's professional capabilities, prior to and/or in the context of the workplace discipline/performance review(s) on which Defendants now significantly predicate her termination, and that she voiced her objections thereto. There is a triable issue as to whether gender discriminatory and/or retaliatory animus was a motivating factor in those decisions.[28] As noted above, although this Court may entertain

---

24. (...continued)
inference of discrimination will be weak or nonexistent").

25. See Brief in Support of Motion for Summary Judgment at 5, n. 3. See also O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996) (indicting that replacement by a "substantially younger" individual goes to *prima facie* case); Withcer v. Sodexho, Inc., 247 Fed.Appx. 328 (3d Cir. 2007) (same).

26. It is Defendants' position that Plaintiff was terminated for her insubordination, lack of leadership, and poor attitude/negative effect on morale. See Brief in Support of Motion for Summary Judgment at 6.

27. Cf. Brief in Support of Motion for Summary Judgment at 9 (quoting Plaintiff's deposition testimony that she "believe[s she] was terminated" because of her interactions with the ACYS inspector).

28. Although Defendants assert that Plaintiff's claim for discriminatory retaliation must fail as a matter of law because she identifies no protected activity, see Brief in Support of Motion for Summary Judgment at 11, Plaintiff has alleged that she was reprimanded/received negative
(continued...)

doubts as to Plaintiff's ability to ultimately carry her burden of persuasion on her gender discrimination/retaliation claim, she raises - as to that claim - material fact and credibility questions which are in the sole provence of the jury. Her age discrimination/retaliation claim is, however, conclusory, speculative, and unsupported by evidence sufficient under the McDonnell Douglas standard in the context of the case.[29]

### 6. Aiding/Abetting Employment Discrimination Under the PHRA

---

28. (...continued)
performance evaluation(s) in retaliation for complaints of gender discriminatory remarks/treatment. See Report and Recommendation at 4 (noting that Plaintiff allegedly received supervisory reprimands in retaliation for Plaintiff's complaints of discrimination); Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment (referring to complaints of discriminatory treatment and Defendants' response of ignoring them and subjecting Plaintiff to adverse treatment as a result); id. (asserting that in response to her complaints regarding Mr. Blount's gender discriminatory remarks, Plaintiff's supervisors admonished her not to display emotion in his presence and reprimanded her). Cf., *e.g.*, Wideman v. Wal-Mart Stores, 141 F.3d 1453, 1455 (11th Cir. 1998) (plaintiff voicing complaint of discriminatory treatment engaged in protected activity and negative evaluations to employment record constitute adverse employment action) (cited with approval in Miles v. City of Phila., 2001 WL 34076644 (E.D. Pa. April 10, 2001); McGraw, 1997 WL 799437 at *7 (noting that "Third Circuit has held that informal protests of discrimination, such as complaints to management, rise to the level of protected activity").

Similarly, although Defendants now assert that Plaintiff waived a claim of retaliation in violation of Title VII because it was not included in her EEOC charge, see Reply Brief in Support of Motion for Summary Judgment at 3, Plaintiff's EEOC charge does in fact list her "Cause of Discrimination" as race, sex, age and retaliation, and allege that she was "discriminated and retaliated against" owing to her age, race and sex, as well as that she was retaliated against for whistleblowing. See Plaintiff's Concise Statement of Material Facts, Exhibit 7.

29. As with her claims of race discrimination/retaliation, Plaintiff proffers no specific evidence of age discriminatory remarks/treatment, contemporaneous reporting/complaint of age discrimination, or statistical evidence (such as applicant pool to employment data). That Plaintiff was on isolated occasions overruled as to supervisory decisions regarding two younger African-American subordinates is, without more, insufficient. See discussion, *supra*.

Finally, Defendants reassert that Counts IV through VI fail to set forth individual causes of action against Defendants Mel Blount, Tianda Blount and Carol Lockett for aiding and abetting employment discrimination in violation of the PHRA because liability requires an affirmative act. As explained in this Court's April 4, 2006 Report and Recommendation, where Plaintiff makes out a claim that an individual *supervisory* employee directly engaged in or was aware of and permitted discrimination, Plaintiff may maintain an action under 43 P.S. § 955(e). See, *e.g.*, Destefano v. Henry Mitchell, 2000 WL 433933, *2 (E.D. Pa. Apr. 13, 2000) (explaining that the "[c]ourts have distinguished between nonsupervisory and supervisory employees and imposed liability . . . on the latter, on the theory that [they] can share the discriminatory intent and purpose of the employer") (citing Dici v. Pennsylvania, 91 F.3d 542, 553 (3d Cir. 1996); Davis v. Levy, Angstreich, Finney, Baldante, 20 F.Supp.2d 885, 887 (E.D. Pa. 1998) (holding that individual supervisory employee could be held liable for own direct acts of discrimination or for failure to take action). As discussed above, Plaintiff's Title VII gender discrimination claim is sufficient to survive summary judgment, and these same facts are sufficient to maintain her related claim under §955(e).

III. **CONCLUSION**

For the reasons set forth above, is respectfully recommended that the Defendant's Motion for Summary Judgment be granted as to Plaintiff's claims for (a) violation of the Equal Protection Act of 1963; (b) subjection to a hostile work environment; (c) reverse race discrimination and/or retaliation; and (d) age discrimination and/or retaliation; and that it be denied in its remaining respects.

18

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

LISA PUPO LENIHAN
United States Magistrate Judge

Dated: April 8, 2008